# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
                               )
                **Plaintiffs,** )       **Case No.: 10 C 236**
       **v.** )
                                 )       **Judge Shadur**
ROBI EXCAVATING, INC., an Illinois )
corporation, and CHRIS GARWACKI, )
individually, )
                                 )
                **Defendants.** )

## MOTION FOR ENTRY OF DEFAULT JUDGMENT IN SUM CERTAIN

Now come Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health

and Welfare Department of the Construction and General Laborers' District Council of Chicago

and Vicinity and James S. Jorgensen (collectively referred to hereinafter as the "Funds"), by and

through their attorney, Patrick T. Wallace, and hereby move for entry of default judgment in sum

certain on Counts II of Plaintiffs' Complaint against Defendants Robi Excavating, Inc.

(hereinafter "Robi" or the "Company") and Chris Garwacki. In support of this Motion, Plaintiffs

state as follows:

      1.      Plaintiffs filed their Complaint on January 14, 2010 to collect amounts due on a

defaulted Installment Note (Count I), to compel the Company to submit current benefit reports

and contributions, obtain and maintain a surety bond and submit the Company's books and

records to an audit for the period of July 1, 2008 forward (Count II), and to collect amounts due

on an audit for the period of January 1, 2006 through January 30, 2008 (Counts III, IV) and to collect unpaid wages (Count V).

2.     Summons and Complaint were personally served on Chris Garwacki on behalf of himself and as the Registered Agent of Defendant Robi on January 21, 2010.

3.     After service of Summons and the Complaint, Defendants paid the amounts due on the defaulted Installment Note that was the subject of Count I.   Judgment was entered in favor of the Funds and against Defendants Robi and Garwacki on July 15, 2010 in the amount of $284,964.77 on Counts III through V of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 54(b). Plaintiffs now seek entry of final judgment on Count II, the remaining count left in the Complaint.

4.     Pursuant to Section 502(g)(2) of the Employees Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1132(g)(2) , Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185, the Agreement, the Note and Guaranty, and the Funds' respective Agreements and Declarations of Trust, Plaintiffs are entitled to judgment in their favor and against Defendants Robi and Garwacki on Count II of Plaintiffs' Complaint as follows:

(a)     As to Defendant Robi, $37,884.97 representing benefits, dues, liquidated damages, interest and audit costs due on an audit for the period of October 1, 2008 through August 31, 2010.  See Affidavit of James Fosco, attached hereto as Exhibit A, ¶ 5.

(b)     As to Defendant Garwacki, 10,476.33 of the amount set forth in paragraph 4(a) jointly and severally representing benefits, dues, liquidated damages, interest and

2

audit costs due on an audit for the period of October 1, 2008 through May 31, 2010. See Affidavit of James Fosco, attached hereto as Exhibit A, ¶ 6.

(c)     As to both Defendants jointly and severally, $11,682.50 representing attorney's fees and costs expended to date in this matter. See Declaration of Patrick T. Wallace, attached hereto as Exhibit B.

5.     Plaintiffs further request that the Court order Defendant to obtain and maintain a surety bond. See Affidavit of James Fosco, ¶ 7.

WHERFORE, Plaintiffs respectfully request judgment in their favor and against Defendants Robi Excavating, Inc. and Chris Garwacki as follows:

(a)     entering judgment in favor of Plaintiffs and against Defendant Robi Excavating, Inc. in the amount of $49,567.47.47 representing benefits, dues, liquidated damages, interest and audit costs due on an audit for the period of October 1, 2008 through August 31, 2010 and Plaintiffs' attorneys' fees and costs;

(b)     entering judgment in favor of Plaintiffs and against Defendant Chris Garwacki jointly and severally with Robi for $22,158.83 representing benefits, dues, liquidated damages, interest and audit costs due on an audit for the period of October 1, 2008 through May 31, 2010 and Plaintiffs' attorneys' fees and costs;

(c)     ordering Robi to obtain and maintain a surety bond in accordance with the terms of the Agreement; and

(d)     ordering the Defendants to pay post-judgment interest on the judgment from the

date judgment is entered until the judgment is paid in full.

                                        Respectfully submitted,

Date:  June 22, 2011                    Laborers' Pension Fund, et al.

                                        By:     /s/ Patrick T. Wallace

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LABORERS' PENSION FUND and<br>LABORERS' WELFARE FUND OF THE<br>HEALTH AND WELFARE DEPARTMENT<br>OF THE CONSTRUCTION AND GENERAL<br>LABORERS' DISTRICT COUNCIL OF<br>CHICAGO AND VICINITY, and JAMES S.<br>JORGENSEN, Administrator of the Funds, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | ) | Case No.: 10 C 236 |
| v. | )<br>) | Judge Shadur |
| ROBI EXCAVATING, INC., an Illinois<br>corporation, and CHRIS GARWACKI,<br>individually, | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**AFFIDAVIT OF JAMES FOSCO**

JAMES FOSCO, being first duly sworn on oath, deposes and states as follows:

1.     I am a Field Representative employed by the Laborer's Pension Fund and the

Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago

and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-

referenced action.  My responsibilities include oversight of the collection of amounts owed by

Defendant Robi Excavating, Inc. (hereinafter "Robi" or the "Company").  This Affidavit is

submitted in support of the Laborers' Funds' Motion for Entry of Default Judgment in Sum

Certain.  I have personal knowledge regarding the statements contained herein.

2.     On July 7, 1993, the Company signed a Memorandum of Joint Working

Agreement with the Construction and General District Council of Chicago ("District Council")

and Laborers' Local Union No. 96.  A true and accurate copy of the Memorandum is attached



EXHIBIT
A

hereto as Exhibit A-1. On or about August 18, 1998, the Company entered into an Independent Construction Industry Collective Bargaining Agreement with the District Council. A true and accurate copy of this Agreement is attached hereto as Exhibit A-2. Pursuant to the terms of the Memoranda and the Agreement, the Company is bound to the terms of the relevant collective bargaining agreements incorporated by reference in the Agreement and the Funds' respective Agreements and Declarations of Trust.

  3. Pursuant to agreement, the Funds have been duly authorized to act as collection agents on behalf of the District Council for union dues owed to the District Council.

  4. The Agreement and the Funds' respective Agreements and Declarations of Trust to which the Company is bound require that the Company submit benefit reports and contribution payments by the tenth day of the following month. Payments which are not received within thirty days of this date are assessed liquidated damages in the amount of 10 percent or 20 percent liquidated damages (on Pension, Welfare and Training Fund after June 1, 2007) of the principal amount of delinquent contributions, and interest at a rate of prime plus 12 percent compounded annually from the date of delinquency forward. The Agreement and the Funds' respective Agreements and Declarations of Trust also obligate the Company to submit its books and records to the Funds for periodic audits to determine benefit contribution compliance. A copy of the relevant portions of the applicable area-wide Agreements are attached as Exhibits A-3 and A-4; a copy of the relevant portions of the Amended Agreement and Declaration of Trust creating the Laborers' Pension Fund is attached as Exhibit A-5; and a copy of the relevant portions of the Amended Health and Welfare Department of the Construction and General Laborers' District Council is attached as Exhibit A-6.

5.    A revised audit of the Company's books and records for the period of October 1, 2008 through August 31, 2010 has revealed the following amounts due:

| | |
|---|---|
| Welfare Fund | $8,728.69 |
| Liquidated damages | 1,745.74 |
| Interest | 1,166.15 |
| Accumulated liquidated damages (late 4-10/10) | 8,427.24 |
| Pension Fund | 6,924.61 |
| Liquidated damages | 1,384.92 |
| Interest | 871.22 |
| Accumulated liquidated damages (late 4-10/10) | 6,859.70 |
| Training Fund: | 334.07 |
| Liquidated damages | 68.81 |
| Interest | 41.36 |
| LECET | 59.39 |
| Liquidated damages | 5.94 |
| Interest | 7.82 |
| LDCLMCC | 106.29 |
| Liquidated damages | 10.63 |
| Interest | 14.66 |
| CCA Fund: | 62.01 |
| Liquidated damages | 6.20 |
| Interest | 8.52 |
| Audit Costs: | 1,041.00 |
| **Total** | **$37,884.97** |

A true and accurate copy of the audit is attached hereto as Exhibit A-7.

6.    The defaulted Installment Note that was the subject matter of Count I of Plaintiffs' Complaint was paid in full on June 10, 2010. Chris Garwacki is liable for any amounts that were due or came due before the Note was paid in full. As a result, Garwacki owes the following amounts on the revised audit of the Company's books and records for the period of October 1, 2008 through August 31, 2010:

| | |
|---|---|
| Welfare Fund | $3,557.19 |
| Liquidated damages | 711.44 |
| Interest | 847.84 |

3



HEADQUARTERS OF

# Construction & General Laborers'
# District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A. F. of L. - C. I. O.

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • TELEPHONE: 237-7537

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 116, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, 1092

| Joseph A. Lombardo, Jr. | MEMORANDUM OF JOINT WORKING AGREEMENT | Ernest Kumerow |
|---|---|---|
| Secretary-Treasurer | | President |
| | | Business Manager |

It is hereby stipulated and agreed by and between **ROBI EXCAVATING INC.** hereinafter the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 116, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, 1092, and encompassing the geographical areas of the Counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. Employer, in response to the Union's claim that it represents an uncoerced majority of each Employer's laborer employees, acknowledges and agrees that there is no good faith doubt that the Union has been authorized to and in fact does represent such majority of laborer employees. Therefore, the Union is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9(a) of the National Labor Relations Act without the need for a Board Certified Election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Chicagoland Association of Wall and Ceiling Contractors, Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors, and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976, together with all amendment thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of that local Union is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which the (HI) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and to become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if the (HI) had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with an equal number of Trustees designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare and Pension Funds are made by duly authorized agents of the EMPLOYER in the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report from to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER's violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management, or operation of the EMPLOYER's business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The negotiated wage and fringe benefit contribution rates in the various collective bargaining agreements are as follows:

June 1, 1991
$18.00 Per hour Wages
$ 2.22 Per hour Health and Welfare Fund
$ 1.00 Per hour Pension Fund
$ .10 Per hour Training Fund
$ .02 Per hour M.C.I.A.F. (Of each amount as provided broker agreement.)
$ .01 Per hour Chicagoland Safety Council (if applicable in local agreement)
Dues Deductions are $ .20 Per hour for each hour worked unless notified of an increase.

| | |
|---|---|
| May 31, 1992<br>June 1, 1992 | $1.05 Per hour Increase per year on June 1, 1992 thru May 31, 1993 to be allocated between wages and benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same unless additional sums are allocated. M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract. Dues Deductions are $ .20 Per hour unless notified of an increase. |
| to | |
| May 31, 1993<br>June 1, 1993 | $1.05 Per hour Increase per year on June 1, 1993 thru May 31, 1994, to be allocated between wages and benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same unless additional sums are allocated. M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract. Dues Deductions are $ .20 Per hour unless notified of an increase. |
| to | |
| May 31, 1994<br>June 1, 1994 | $1.10 Per hour Increase per year on June 1, 1994 thru May 31, 1995, to be allocated between wages and benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same unless additional sums are allocated. M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract. Dues Deductions are $ .20 Per hour unless notified of an increase. |
| to | |
| May 31, 1995 | All additional wage rate dues checkoff, or fringe benefit increases as negotiated after May 31, 1995 shall be incorporated in this Memorandum of Agreement. |

7. Effective June 1, 1991 all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of Twenty Cents ($.20) per each straight-time hour worked and Twenty Cents ($.20) for each overtime hour worked, and shall remit monthly to the UNION office designated by the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through the 31st day of May, 1995 and shall continue thereafter unless there has been given notice less than sixty (60) days nor more than ninety (90) days from the expiration date written notice by registered or certified mail, by either party hereto, of the desire to modify and terminate this Agreement through Negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contract.

10. The undersigned Employer acknowledges and hereby affirms that its signature on the contract as it may wish to negotiate accordingly. The Employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

Dated at **Office** this **7** day of **July** 19**93**

ACCEPTED:

Laborers Local Union No. **96**

By **Timothy Riley** (FIELD REP)

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

**Ernest Kumerow**
Ernest Kumerow, President - Business Manager

By **Joseph A. Lombardo, Jr.**
Joseph A. Lombardo, Jr., Secretary-Treasurer

**ROBI EXCAVATING INC.**

By **[signature]** Ries

**191 E. Stevenson Glendale Hts.**
(Address)

**(708)** **510-9109**
(Telephone)

TRUST FUND

EXHIBIT
A-1





HEADQUARTERS OF

# Construction & General Laborers'
## District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A.F. of L. - C.I.O. -
6121 WEST DIVERSEY AVENUE · CHICAGO, ILLINOIS 60639 · PHONE: 773-237-7637 · FAX: 773-237-3417

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092

2918

### INDEPENDENT CONSTRUCTION INDUSTRY
### COLLECTIVE BARGAINING AGREEMENT

It is hereby intended and agreed by and between __Robi Excavating, Inc.__, herein called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, 1092 and encompassing the geographical areas in the counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. EMPLOYER, in response to the UNION's claim that it represents an unconvced majority of each EMPLOYER's laborer employees, acknowledges and agrees that there is no good faith doubt that the UNION has been authorized to and in fact does represent such majority of laborer employees. Therefore, the UNION is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board certified election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, the G.D.U.I.U.D.A.W.E.D., the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, the Illinois Small ... and amendments thereto. Where no current Association agreement exists has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976 together with all amendments thereto. The EMPLOYER ... is current ment is negotiated, the terms of the most recent expired agreement is incorporated herein with all terms, conditions and dates extended for the duration hereof, and it current agreements exists that shall be incorporated retroactively herein. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the Association agreement covers the local UNION in herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local Association agreement. Nothing herein shall limit the jurisdiction of this Agreement to less than that provided in the Agreement.

3. The EMPLOYER agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, the LABORERS' PENSION FUND, the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND, the CHICAGO AREA LABORERS-EMPLOYERS COOPERATION EDUCATION TRUST ("LECET"), and to all other designated Union-affiliated benefit funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees, designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension, Training and LECET Funds were made by duly authorized agents of the EMPLOYER at proper rates, for the appropriate periods of time, and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this WORKING Agreement shall attain all the work traditionally performed by members of the UNION. The EMPLOYER agrees that it will not cause any work traditionally performed work to be done as a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER, whether acting as a contractor, general manager or developer, who contracts out or sublets any of its work coming within the jurisdiction of the UNION, shall observe the obligations of any such subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER's violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management or operation of the EMPLOYER's business by sale of otherwise, it is agreed that as a Condition of such sale, transfer or change that the new owner and arrangement shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise. The EMPLOYER shall provide ten (10) days prior notice to the Union of the sale or transfer.

6. The negotiated wage and fringe benefit contribution rates in the Various Collective Bargaining Agreements are as follows:

| June 1, 1995 | $ 22.35 Per Hour Wages |
| to | $ 3.27 Per Hour Health and Welfare Fund |
| | $ 2.05 Per Hour Pension Fund |
| May 31, 1999 | $ .10 Per Hour Training Fund (plus additional amounts in Association agreement) |
| | $ .02 Per Hour MCIAF (if applicable in Association agreement) |
| | $ .02 Per Hour LECET (to be deducted from MCIAF if LECET contribution is not provided in Association agreement) |
| | $ .01 Per Hour Chicagoland Safety Council (if applicable) |

In addition, the Employer shall pay other amounts if provided in appropriate Association agreements for Industry funds.

| June 1, 1999 | $ 1.25 Per Hour increase for the year June 1, 1999 through May 31, 2000 to be |
| to | allocated between wages and fringe benefits by the Union in its sole discretion. |
| May 31, 2000 | Welfare, Pension, Training and LECET Funds contributions to remain the same unless additional sums are allocated. |

| June 1, 2000 | $ 1.35 Per Hour increase for the year June 1, 2000 through May 31, 2001, to be |
| to | allocated between wages and fringe benefits by the Union in its sole discretion. |
| May 31, 2001 | Welfare, Pension, Training and LECET Funds contributions remain the same unless additional sums are allocated. |

All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001, shall be incorporated in the Memorandum of Agreement.

7. Effective June 1, 1998, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by the said contract, uniform working dues in the amount of 1.5% of gross wages, or as determined by the UNION, and shall remit monthly to the UNION office designated in the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whom wages and dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intent of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended and each deduction be made only pursuant to written agreements from each employee on whose account such deductions are made, which agreement shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through May 31, 2001 (unless an applicable Association agreement is of longer duration) and shall continue thereafter unless there has been given written notice, by registered or certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the EMPLOYER and the UNION agree to be bound by the new May negotiated contract and negotiated applicable with the various Associations incorporating ... and expending this Agreement for the life of the newly negotiated contract.

10. The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete Joint Working Agreement. Upon request of the UNION, the EMPLOYER shall execute another agreement that reflects the final contract settlement incorporated herein.

Dated _____
       month / day        year

ACCEPTED:

Laborers' Local Union No. _____

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY
By: __Robert L. Block__, Trustee

For Office Use Only:

Robi Excavating, Inc.
             (Employer)

By: __Chris Kozlowski__   PRESIDENT
    (Print Name and Title)

__(Signature)__

P.O. Box 7417
    (Address)

Lake In The Hills, IL 60102
    (City, State and Zip Code)

847-669-0180
    (Telephone)

EXHIBIT
A-2

TRUST FUND

JUNE 1, 2001 TO MAY 31, 2006

# CONCRETE AGREEMENT

between the

## CONCRETE CONTRACTORS ASSOCIATION OF GREATER CHICAGO

and the

## CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

1

**NOTES**

**EXHIBIT**

**A-3**

of a non-signatory subcontractor, or fail to remove the non-signatory subcontractor within 24 hours upon the Union's request, the Employer shall pay to the Union, and its employees on the jobsite, an amount equal to the difference between the subcontractor's aggregate wages and benefits and the amount set forth in this Agreement for the entire period that the subcontractor works with a Union agreement on the job site.

## Article VIII
## WAGES

**Paragraph 1.** The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2001 to and including May 31, 2006, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include an increase of $1.65 per hour effective June 1, 2001 to May 31, 2002 for a wage rate of $26.65 per hour which includes the dues deduction. June 1, 2002 to May 31, 2003, $1.80 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. June 1, 2003 to May 31, 2004, $2.00 per hour increase to be allocated between wages and fringe benefits by the Union in its sole discretion. June 1, 2004 to May 31, 2005, $2.20 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. June 1, 2005 to May 31, 2006, $2.20 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion.

| CLASSIFICATION | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 |
|---|---|---|---|---|---|
| Building Laborers | $26.65 | $1.80 | $2.00 | $2.20 | $2.20 |
| Fire BrickWork and Boiler Setter Laborers...26.975 | | to be allocated between wages and fringe benefits by the Union in its sole discretion. (See above paragraph) | | | |
| Jackhammerman (On Firebrick Work Only) ....27.225 | | | | | |
| Boiler Setter Plastic Laborers ...27.10 | | | | | |

Chimney Laborers (Over
40 Feet)...26.75
Chimney on Firebrick.....27.00
Scaffold Laborers.........26.75
Caisson Diggers..........27.00
Jackhammerman .......26.875
Power Driven Concrete Saws,
Other Power Equipment...26.875
Stone Derrickman and
Handlers................26.85
Fireproofing and Fire
Shop Laborers............26.55
Well Point System Men...27.00
Pumps for Dewatering, other
Unclassified Laborers.....26.65
Windlass and Capstan
Person..................26.80
Cement Gun Nozzle
Laborers (Gunite) .......26.80
Cement Gun Laborers......26.725
Plaster Laborers..........26.65
Construction Specialist...26.65
Apprentice (1st 6 Months)......... 15.99
Apprentice (2nd 6 Months)......... 18.655
Apprentice (3rd 6 Months)......... 21.32
Apprentice (4th 6 Months)......... 23.935
Apprentice (5th 6 Months)......... 26.65

Sub-Foremen shall receive $.75 premium wages over and above top Laborers' Scale under his supervision.

Building Labor Foremen shall receive $1.50 premium wages over and above top Laborers' Scale under his supervision.

General Foremen shall receive $2.00 premium wages over and above top Laborers' Scale under his supervision.

Superintendents shall receive $3.00 premium wages over and above top Laborers' Scale under his supervision.

**Dosimeter Use:** A premium of one ($1.00) dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

**Power Pac:** When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

**Asbestos Use:** For the period June 1, 2001 through May 31, 2002, a premium of fifteen cents ($.15) per hour shall be paid to any Laborer required to work with asbestos who is a certified asbestos Laborer licensed by the State of Illinois as an Asbestos Abatement worker. Thereafter, no premium shall be paid.

## Paragraph 2. APPRENTICE PROGRAM

**Section 1. APPRENTICE COMMITTEE:** The Employer hereby agrees that the Joint Apprenticeship Training Committee (JATC) shall have the authority to establish rules for the apprentice program, including penalties for violations of the apprenticeship rules, which are incorporated herein by reference. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Apprentice and Training Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreement and Declaration of Trust.

**Section 2. APPRENTICE PROGRAM FUNDING:** The apprenticeship program administered by the JATC shall be self sustaining. In addition to the sums set forth in Article IX, Paragraph 2 of the Agreement, effective January 1, 1999, or on the date when the Association elects to participate in the program, whichever is later, the Employer shall also contribute to the Training Fund an additional contribution of five cents ($.05) per hour for each hour worked by all employees covered by this Agreement, or a lesser amount as may be determined by the JATC. Effective June 1, 1999 and June 1, 2000, or on the

date when the Association elects to participate in the program, whichever is later, the contribution shall be increased as determined by the JATC, but in no event shall the aggregate contributions under this Paragraph 2 exceed five cents ($.05) over the term of this Agreement.

**Section 3.** The term of apprenticeship shall be 4,000 hours, or two years, whichever occurs later. All Health ment and Welfare, Pension, Training Fund, Industry Advancement and other contributions required under this Agreement will commence immediately upon employment of an apprentice. Union affiliation will be required after seven (7) days of employment.

**Section 4.** The wages per hour paid to apprentices shall be as follows:

| | |
|---|---|
| 1st six (6) months: | 60% of journeyman (base) wages |
| 2nd six (6) months: | 70% of journeyman (base) wages |
| 3rd six (6) months: | 80% of journeyman (base) wages |
| 4th six (6) months: | 90% of journeyman (base) wages |
| After 24 months: | 100% of journeyman (base) wages |

**Section 5.** The ratio of journeymen to apprentices shall be six (6) laborer journeymen to one (1) laborer apprentice on a company-wide basis, with no more than twenty percent (20%) of laborers being apprentices on any one job site of the Employer. Employers who employ a maximum of between one (1) and five (5) laborer journeymen shall be entitled to one (1) laborer apprentice, who may be assigned to job sites irrespective of the twenty percent (20%) job site maximum specified in this provision.

**Section 6.** Referral of apprentices will be through the Local Union with jurisdiction over the job site. All apprentices must be referred by the Local Union from approved JATC apprentices. Employers requesting apprentices will be assigned an apprentice from the available JATC apprentice pool. The JATC can limit the number of apprentices to that which is adequate for current needs and which can be properly trained by the program.

15

14

Employers may recall their laid off apprentices to work, provided that the Employer complies with the ratios set forth in Paragraph 5. All apprentices must report their hours weekly to the JATC. All apprentices will be tested for the presence of illegal substances at the time they enter the apprentice program.

Paragraph 3. WELFARE: Beginning the period from June 1, 2001 to May 31, 2002, the Employer agrees to make Health and Welfare contributions of $3.45 per hour for each hour worked by all employees covered by this Agreement in addition to the wages herein stipulated. This $3.45 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2002 to May 31, 2003; June 1, 2003 to May 31, 2004, June 1, 2004 to May 31, 2005; June 1, 2005 to May 31, 2006; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training and other funds to be allocated from the economic package for that year. (See Article VIII, Paragraph 1).

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreements and Declarations of Trust.

Paragraph 4. PENSION: Beginning June 1, 2001 the Employer agrees to make a pension contribution of $2.65 per hour for each hour worked by all employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $2.65 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2002 to May 31, 2003; June 1, 2003 to May 31, 2004, June 1, 2004 to May 31, 2005, June 1, 2005 to May 31, 2006; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training and other funds to be allocated from the economic package for that year. (See Article VIII, Paragraph 1).

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreements and Declarations of Trust.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during

this grace period shall be assessed liquidated damages amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees place the account in the hands of legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

**Paragraph 5. Section 415 Excess Benefit Fund.** A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

**Paragraph 6. SUPERVISORS:** To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 3 and 4 of Article VIII of this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 3 and 4 of Article VIII hereof.

**Paragraph 7. OUT OF TOWN WORK:** When Laborers who reside or work in the nine-county geographic area covered by this Agreement are asked to work at locations outside these nine counties, the Employer

shall continue to report and pay benefits for all hours worked outside the nine counties. If the work performed is covered under a labor agreement with the Laborers' International Union of North America or its affiliates, the Employer shall report and pay the benefit contributions to the fringe benefit fund identified, and the contribution rates specified, under that labor agreement. If the work performed is not covered under a labor agreement with the Laborers' International Union of North America or its affiliates, then the Employer shall report and pay the benefit contributions to the fringe benefit funds identified, and the contributions rates specified, under this Agreement.

## Article IX
## BONDING

All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this Agreement.

The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;

(b) Termination of business;

(c) Change of name commonly used in business operation;

(d) Change in form of business organization;

(e) Incorporation of business;

(f) Dissolution of corporation;

(g) Name and business organization of successor;

(h) Admission to or withdrawal from any association operating as a multi-Employer bargaining unit.

## Article X
## INDUSTRY FUND

**Paragraph 1.** Each Employer shall pay the amount of seven cents ($.07) for each hour worked by those employees covered under this Agreement to the CCA Industry Advancement Fund ("Industry Fund") and shall also pay the amount of six cents ($.06) for each hour worked by those employees covered under this Agreement to the Chicago-area Laborers-Employees Cooperation Education Trust ("LECET") and shall also pay the amount of twelve cents ($.12) for each hour worked by those employees to the Laborers', District Council Labor-Management Cooperation Committee ("LDC/LMCC").

**Paragraph 2.** The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Industry Fund, LECET, and the LDC/LMCC, and all amendments thereto, and agrees to be bound by all actions taken by the Trustees of those funds pursuant to the Agreement and Declaration of Trust of those funds.

**Paragraph 3.** Should any Employer fail to make payments to the Industry Fund, LECET Fund or LDC/LMCC, the Employer shall be liable for and pay, in addition to the delinquent contributions, interest at a rate of ten percent (10%) per year for such delinquencies, and to pay all costs of collection, including audit expenses and attorney fees and costs.

## Article XI
## PARTICULAR WORK RULES AND
## CLARIFICATION OF CONDITIONS

**Paragraph 1.** (a) Building Laborers' scale shall apply to all work performed by the Laborers except as specifically classified.

(b) Boiler Setter Laborers will include all work of handling solid refractory materials and also fire brick work in boiler setting, open hearth, furnace, blast fur-

nace, soaking pits, tanks, dust catchers, coke oven batteries, furnace chimneys and stacks, including cleanup work on the above services.

(c) Boiler Setter Plastic Laborers applies to work of actually installing plastic, in connection with the boiler work or other non-solid refractory materials. Mortar mixers, lancers, burners, etc., plus all work from point of forty (40) feet above normal ground level in fire brick work and Boiler Setters Laborers' Classifications.

Minimum safety measures for Boiler Setters are that all scaffolding, in and around blast furnaces and hot stoves, etc., shall not exceed five (5) feet per landing and be constructed of solid-type materials, except the large cable-type used in blast furnaces, and at least every fourth scaffold shall be left in place to serve as a safety scaffold with ladders extending to safe distance above each landing. The Employer shall furnish respirators, safety goggles, gloves and other protection materials necessary in and about dusty and hot working conditions during all furnace work.

(d) Caisson Diggers applies to all caisson work and men working in trenches, foundation pits and piers eight (8) feet or more in depth below the level that excavation begins in such trenches, foundation pits or piers.

Where hazardous conditions exists when excavating trenches, foundation pits or piers or where a type of soil, sand or other material being removed creates a hazardous condition for the employee such trenches, foundation pits or piers must be shored or sheathed, and the employees performing the work of shoring and sheathing shall be paid the caisson rate.

Where hazardous conditions do not exist, but sheathing or shoring is necessary solely for the purpose of protecting a bank or preserving the work, then caissons rates shall not apply.

When specifications show the depth of such excavation to exceed eight (8) feet, said caisson rate shall apply

from the start of excavation when hand dug. For safety reasons, no worker shall be permitted to work alone if excavation exceeds five (5) feet, unless he is working under direct supervision.

(e) Chimney Laborers over forty (40) feet, applies to all free-standing chimneys in excess of forty (40) feet above the ground level. The Chimney Laborers' rate shall apply for the entire height of the chimney, both erecting or wrecking such chimney.

Free-standing chimneys shall be construed as chimneys built from the ground up, outside the building, for industrial, commercial or institutional purposes. It is understood that this provision does not apply in the erection of ordinary chimneys for apartment buildings, etc., unless the chimneys go forty (40) feet above the roof level.

(f) Jackhammermen: The rate for Jackhammermen herein established shall apply to any mechanically operated tool over thirty-five (35) pounds in weight, used in demolition, concrete breaking, tamping or other similar work. The regular building Laborers' rate shall apply to all lighter mechanical tools.

(g) Scaffold Laborers: Applies to all Laborers engaged in installing, relocating and/or removing all swinging, tubular and other types of scaffolds designed and used for tending to or servicing our allied trades. The raising and lowering of swinging and specially designed scaffolds by hand, by power, or by any other process, is not included in scaffold Laborers' rates.

(h) Stone Derrickmen and Handlers: Applies to all Laborers engaged in helping the stone setters set and distribute dimensional cut stone, terra cotta, granite or prefabricated materials replacing or substituted for cut stone, etc.

(i) Windlass and Capstan Persons: Applies to all hoisting units attached to mixers or movable equipment used to raise material where regular hoists cannot be erected or used.

multiple of eight (8) Laborers employed thereafter to properly supervise the various phases of the work. A Sub-Foreman shall receive $.75 premium wages above the regular wages paid those Laborers under his supervision, plus established overtime rates. When a Labor Foreman is needed to supervise Laborers such Labor Foreman shall receive $1.50 or more premium wages above top labor scale, as mutually agreed between said Labor Foreman and his Employer.

The above and foregoing shall not be so construed as to restrict the Employer's right to pay higher premium wages or appoint a greater percentage of foremen and/or sub-foremen.

(r) The Employer shall furnish any necessary protective medication, such as petroleum jelly, to prevent burns from creosote or chemicals which may prove injurious to the skin.

(s) On a job site requiring a Tool Shanty, said Tool Shanty shall be tended by a Laborer if Employer determines tending is required.

(t). Portable Water Pumps shall be tended by Laborers if Employer determines tending is required.

(u) In any instance where a machine replaces only the work of Laborers, said machine shall be operated by a Laborer if so determined by the Employer.

(v) Any building 125 feet high or more shall require the use of a Man Cage.

**Paragraph 2.** Wages shall be paid by payroll check, which will include a stub or statement showing the number of hours worked and all deductions from wages. Failure on the part of the Employer to have sufficient funds in the bank to meet pay checks issued workers, shall deprive such Employers henceforth from the right to pay by checks and Joint Arbitration Board shall assess such Employer a sum equal to not less than the expense

(j) Fireproofing and Fire Shop Laborers: applies to fireproofing beams, ceilings and walls, etc., in connection with gunite work or any other process, including clean-up work on job site, shops or yards.

(k) Cement Gun Nozzle Laborers: (Gunite) Applies to Laborers handling nozzle in application of gunite.

(l) Cement Gun Laborers: Applies to laborers handling cement gun on concrete work.

(m) Plasterer Laborers: Applies to all Laborers as agreed upon in the Agreement with the Chicagoland Association of Wall and Ceiling Contractors, and Construction and General Laborers' District Council of Chicago and Vicinity.

(n) Laborers who are engaged in the work of construction or wrecking of silos, etc., for grain elevators, and are required to strip or wreck forms as hazardous heights in this work shall be paid chimney Laborers' rates.

(o) On salamander work or hearing for frost prevention work, the building Laborers' rates of wages shall apply for the first eight (8) hours' work regardless of starting time Monday through Friday of each week. All hours worked on Saturday, Sunday or Holidays, and all hours worked after eight (8) hours per day, or forty (40) hours per week Monday through Friday, as above set forth, shall be paid for at one and one-half times the Building Laborers' rate of wages.

(p) Where services are performed by Laborers as watchmen, and such Laborers shall not be engaged in the performance of any other branches of work covered by this Agreement, they shall be paid not less than $1.50 below the Building Laborers' rate.

(q) Foremen: There shall be a Laborer appointed as Labor Foreman when eight (8) or more Laborers are employed on any one job or project; there shall be a sub-foreman after the first sixteen (16) Laborers, and for each

incurred in the collection of the amounts due because of such insufficient funds to meet checks so issued.

**Paragraph 3.** The Union agrees that the employees whom it represents will accept and demand the wages and fringe benefit payments set forth in this Agreement, and the Employer agrees to pay the wages and fringe benefit payments herein stipulated.

**Claims for Shortages:** Claims by employees for shortages must be made within three (3) weeks after shortage is discovered.

**Paragraph 4.** Payment by the Employer and acceptance by the employee of less than the wage herein stipulated shall be a violation of this Agreement upon the part of each. Upon conclusive proof to the Joint Arbitration Board of such violation, the Employer shall immediately pay the unpaid balance due in accordance with the wage herein stipulated; and in addition thereto, shall pay the Joint Arbitration Board an amount equal to the penalties provided in the appropriate Article of General Conditions of this Agreement, but under no circumstances shall such penalties be less than fifty (50%) percent of the amount of such pay shortage as just and liquidated damages because of such violation.

Upon conclusive proof that the Employer is guilty of paying less than the wages herein stipulated, then nothing in this Agreement shall be construed to take from the Union the right to remove workers it represents from the job, and henceforth to deny such Employer further right to the employment of its members.

Members of the party of the second part who are found guilty of violation of this Agreement shall be dealt with by the party of the first part.

**Paragraph 5.** The Union reserves and shall have the right to remove its men from any job upon the failure of the Employer to pay the wages due any of its employees or fringe benefits which may be due by reason of the hours of employment.

**Paragraph 6.** The Employer hereby agrees to maintain proper temporary toilet and drinking facilities accessible to all employees on the job.

**Paragraph 7.** The Employer shall furnish a suitable place, properly heated when reasonably necessary, where Laborers may eat and change their clothes.

**Paragraph 8. HIRING HALL:** No agreement on the request of the Union for the establishment of an exclusive Hiring Hall has been consummated. Therefore, the question of establishing a Hiring Hall is hereby reserved for the future consideration of the parties. Upon service of sixty (60) days' notice in writing upon Employer from Union, such question shall be taken up for discussion and further negotiation by the parties hereto.

## Article XII
## STEWARDS

**Paragraph 1.** The Business Agent of the Union in whose jurisdiction a job or project is located shall have the right to appoint one Laborer employed on the job as Steward on said job or project. Such Steward shall be subject to the same terms of employment as any other employee, but taking into consideration that the Steward should be present during all working hours, all possible overtime work shall be assigned to all Stewards, if the Stewards do not replace another Laborer from that other Laborers' previously assigned duties.

**Paragraph 2.** The duties of the Steward shall include the checking of terms and conditions of work, safety conditions, starting dates of employment for new Laborers, whether Union or Non-Union, and report same to the Business Representative who appointed him. All Laborers employed on a job or project shall report to the Steward any differences or disputes which may arise in connection with the work or any part of it, and the Steward shall report same to the office of the Union. If it becomes necessary to discharge or lay off any Laborers because of completion of the work or otherwise, the Laborer

JUNE 1, 2006 TO MAY 31, 2010

# BUILDING AGREEMENT

between the

## CONCRETE CONTRACTORS ASSOCIATION
## OF GREATER CHICAGO

and the

## CONSTRUCTION AND GENERAL
## LABORERS' DISTRICT COUNCIL
## OF CHICAGO AND VICINITY

**NOTES**

**EXHIBIT**

A-4

allocated between wages and fringe benefits by the Union in its sole discretion. June 1, 2009 to May 31, 2010, $3.10 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion.

## CLASSIFICATION

Employees shall receive the following hourly premiums in the classifications set forth below:

| | |
|---|---|
| Building Laborers | $0.00 |
| Fire Brick Work and Boiler Setter Laborers | $.325 |
| Jackhammerman (On Firebrick Work Only) | $.575 |
| Boiler Setter Plastic Laborers | $.45 |
| Chimney Laborers (Over 40 Feet) | $.10 |
| Chimney on Firebrick | $.35 |
| Scaffold Laborers | $.10 |
| Caisson Diggers | $.35 |
| Jackhammerman | $.225 |
| Power Driven Concrete Saws, Other Power Equipment | $.225 |
| Stone Derrickman and Handlers | $.20 |
| Fireproofing and Fire Shop Laborers | $.00 |
| Well Point System Men | $.35 |
| Pumps for Dewatering, other Unclassified Laborers | $0.00 |
| Windlass and Capstan Person | $.15 |
| Cement Gun Nozzle Laborers (Gunite) | $.15 |
| Cement Gun Laborers | $.075 |
| Plaster Laborers | $0.00 |
| Construction Specialist | $0.00 |

(d) The terms and conditions of this Agreement shall apply to all Bargaining Unit work performed by the Employer performing such work indirectly if such work is performed by any business entity controlled by the Employer, of if the Employer is a corporation, controlled by the person who controls the Employer.

(e) The Employer shall notify the Union of all non-signatory subcontractors prior to such subcontractors commencing work. Upon request of the Union, any subcontractor that fails to become signatory to the Union labor contract within 24 hours of the Union's request shall be removed from the job site.

(f) The Employer shall not be liable for the wages and fringe benefits owed by the subcontractor. However, should the Employer either fail to timely notify the Union of a non-signatory subcontractor, or fail to remove the non-signatory subcontractor within 24 hours upon the Union's request, the Employer shall pay to the Union, and its employees on the jobsite, an amount to equal to the difference between the subcontractor's aggregate wages and benefits and the amount set forth in this Agreement for the entire period that the subcontractor works with a Union agreement on the job site.

## Article VIII
## WAGES

Paragraph 1. The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2006 to and including May 31, 2010, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include an increase of $2.90 per hour effective June 1, 2006 to May 31, 2007 for a wage rate of $31.55 per hour which includes the dues deduction. June 1, 2007 to May 31, 2008, $3.00 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. June 1, 2008 to May 31, 2009, $3.00 per hour increase to be

January 1, 1999, or on the date when the Association elects to participate in the program, whichever is later, the Employer shall also contribute to the Training Fund an additional contribution of five cents ($.05) per hour for each hour worked by all employees covered by this agreement, or a lesser amount as may be determined by the JATC. Effective June 1, 1999 and June 1, 2000, or on the date when the Association elects to participate in the program, whichever is later, the contribution shall be increased as determined by the JATC, but in no event shall the aggregate contributions under this paragraph 2 exceed five cents ($.05) over the term of this Agreement.

Section 3. The term of apprenticeship shall be 4,000 hours, or two years, whichever occurs later. All Health and Welfare, Pension, Training Fund, Industry Advancement and other contributions required under this Agreement will commence immediately upon employment of an apprentice. Union affiliation will be required after seven (7) days of employment.

Section 4. The wages per hour paid to apprentices shall be as follows:

| | | |
|---|---|---|
| 1st six (6) months: | . | 60% of journeyman (base) wages |
| 2nd six (6) months: | | 70% of journeyman (base) wages |
| 3rd six (6) months: | . | 80% of journeyman (base) wages |
| 4th six (6) months: | . | 90% of journeyman (base) wages |
| After 24 months: | . | 100% of journeyman (base) wages |

Section 5. The ratio of journeymen to Apprentices shall be six (6) laborer journeymen to one (1) laborer apprentice on a company-wide basis, with no more than twenty percent (20%) of laborers being apprentices on any one job site of the Employer. Employers who employ a maximum of between one (1) and five (5) laborer journeymen shall be entitled to one (1) laborer apprentice, who may be assigned to job sites irrespective of the twenty percent (20%) job site maximum specified in this provision.

Sub-Foremen shall receive $.75 premium wages over and above top Laborers' Scale under his supervision.

Building Labor Foremen shall receive $1.50 premium wages over and above top Laborers' Scale under his supervision.

General Foremen shall receive $2.00 premium wages over and above top Laborers' Scale under his supervision.

Superintendents shall receive $3.00 premium wages over and above top Laborers' Scale under his supervision.

Dosimeter Use: A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

Power Pac: When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

Asbestos Use: Regular rate shall apply. No premium shall be paid.

## Paragraph 2. APPRENTICE PROGRAM

Section 1. APPRENTICE COMMITTEE: The Employer hereby agrees that the Joint Apprenticeship Training Committee (JATC) shall have the authority to establish rules for the apprentice program, including penalties for violations of the apprenticeship rules, which are incorporated herein by reference. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Apprentice and Training Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreement and Declaration of Trust.

Section 2. APPRENTICE PROGRAM FUNDING: The apprenticeship program administered by the JATC shall be self sustaining. In addition to the sums set forth in Article IX, Paragraph 2 of the Agreement, effective

Section 6. Referral of apprentices will be through the Local Union with jurisdiction over the job site. All apprentices must be referred by the Local Union from approved JATC apprentices. Employers requesting apprentices will be assigned an apprentice from the available JATC apprentice pool. The JATC can limit the number of apprentices to that which is adequate for current needs and which can be properly trained by the program. Employers may recall their laid off apprentices to work, provided that the Employer complies with the ratios set forth in Paragraph 5. All apprentices must report their hours weekly to the JATC. All apprentices will be tested for the presence of illegal substances at the time they enter the apprentice program.

**Paragraph 3. WELFARE:** Beginning the period from June 1, 2006 to May 31, 2007, the Employer agrees to make Health and Welfare contributions of $7.46 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $7.46 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training and other funds to be allocated from the economic package for that year. (See Article VIII, Paragraph 1)

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreements and Declarations of Trust.

**Paragraph 4. PENSION:** Beginning June 1, 2006 the Employer agrees to make a pension contribution of $4.84 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $4.84 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training and other funds to be allocated from the economic package for that year. (See Article VIII, Paragraph 1)

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreements and Declarations of Trust.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of

the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees place the account in the hands of legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

Paragraph 5. Section 415 Excess Benefit Fund. A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

Paragraph 6. SUPERVISORS: To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 3 and 4 of Article VIII of this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management

Relations Act, as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 3 and 4 of Article VIII hereof.

Paragraph 7. Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund. The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations compared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations to be responsible for appointments and the number of appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

Paragraph 8. Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-appointed Trustees must be full-time employees of the Association's membership. A Contributing Employer shall be defined as an Employer that has employed an average of five (5) or more Laborers performing bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

Paragraph 9. The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusted vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

Paragraph 10. The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusted defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

Paragraph 11. Special Rules for Bonding. An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

**Paragraph 12. OUT OF TOWN WORK.** When Laborers who reside or work in the nine-county geographic area covered by this Agreement are asked to work at locations outside these nine counties, the Employer shall continue to report and pay benefits for all hours worked outside the nine counties. If the work performed is covered under a labor agreement with the Laborers' International Union of North America or its affiliates, the Employer shall report and pay the benefit contributions to the fringe benefit fund identified, and the contribution rates specified, under that labor agreement. If the work performed is not covered under a labor agreement with the Laborers' International Union of North America or its affiliates, then the Employer shall report and pay the benefit contributions to the fringe benefit funds identified, and the contributions rates specified, under this Agreement.

## Article IX
## BONDING

All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this Agreement.

The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;

(b) Termination of business;

(c) Change of name commonly used in business operation;

(d) Change in form of business organization;

(e) Incorporation of business;

(f) Dissolution of corporation;

(g) Name and business organization of successor;

(h) Admission to or withdrawal from any association operating as a multi-Employer bargaining unit.

## Article X
## INDUSTRY FUND

**Paragraph 1.** Each Employer shall pay the amount of seven cents ($.07) for each hour worked by those employees covered under this Agreement to the CCA Industry Advancement Fund ("Industry Fund") and shall also pay the amount of six cents ($.06) for each hour worked by those employees covered under this Agreement to the Chicago-area Laborers-Employees Cooperation Education Trust ("LECET") and shall also pay the amount of twelve cents ($.12) for each hour worked by those employees to the Laborers' District Council Labor-Management Cooperation Committee ("LDC/LMCC").

**Paragraph 2.** The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Industry Fund, LECET, and the LDC/LMCC, and all amendments thereto, and agrees to be bound by all actions taken by the Trustees of those funds pursuant to the Agreement and Declaration of Trust of those funds.

**Paragraph 3.** Should any Employer fail to make payments to the Industry Fund, LECET Fund or LDC/LMCC, the Employer shall be liable for and pay, in addition to the delinquent contributions, interest at a rate of ten percent (10%) per year for such delinquencies, and to pay all costs of collection, including audit expenses and attorney fees and costs.